IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MONICA FERNANDA POMA CHIRIBOGA,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement; EVAN TJADEN, in his official capacity as Acting ICE Field Officer Director; MIKE SMITH, in his official capacity as the County Sheriff of Utah County and warden of the Utah County Jail; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Respondents. | AMENDED[1] MEMORANDUM DECISION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS<br><br>Case No. 2:26-cv-00760-JNP<br><br>Chief District Judge Jill N. Parrish |

Before the Court are Petitioner Monica Fernanda Poma Chiriboga's amended complaint, seeking declaratory and injunctive relief, her motion for a temporary restraining order, and her

[1] This Amended Memorandum Decision and Order replaces the Memorandum Decision and Order entered on September 3, 2026. The previous Memorandum Decision and Order (ECF No. 25) is hereby VACATED. The only change in this Amended Memorandum Decision and Order is that Section II.B.4 has been amended to reflect that warrants for immigration violations may be issued by both the Attorney General and the Department of Homeland Security. This change is not material to the court's analysis, as 1) Respondents nonetheless incorrectly applied 8 U.S.C. § 1225(b) to Ms. Chiriboga; and 2) the warrant issued by the Department of Homeland Security does not appear to have been served on Ms. Chiriboga.

petition for a writ of habeas corpus under 28 U.S.C. § 2241. *See* ECF Nos. 14 & 15. For the following reasons, the court GRANTS the petition for a writ of habeas corpus but DENIES the motion for a temporary restraining order and petitioner's request for declaratory relief.

**BACKGROUND**

Ms. Chiriboga is a citizen and national of Ecuador. ECF No. 15 ⁋ 18. She sought asylum in the United States after using the CBP One app to apply for admission at the Brownsville, Texas Port of Entry in 2024. *Id*. at 50–51. Ms. Chiriboga was granted parole pursuant to 8 U.S.C. § 1182(d)(5), with an expiration date of April 8, 2026. *See* ECF No. 19, p. 2; ECF No. 19-1 ⁋ 10 (Respondents' brief states that Ms. Chiriboga's parole expired on April 7, 2026, but the exhibit cited in support of that statement states that it expired on April 8, 2026). It appears that Ms. Chiriboga's asylum application remains pending. ECF No. 14 ⁋ 4.

On August 16, 2026, Ms. Chiriboga was arrested by Utah state authorities and incarcerated in the Utah County jail based on allegations relating to state misdemeanor assault. *Id*. at 52. A Utah state court initially set bail at $500.00. Id. at 53. However, Utah state authorities declined to file any charges against Ms. Chiriboga. Also on August 16, 2026, the Bureau of Immigration and Customs Enforcement (ICE) issued an immigration detainer against Ms. Chiriboga. ECF No. 14 ⁋ 54. Thereafter, Utah County designated Ms. Chiriboga as "Not Bailable." ECF No. 14-1, p. 1. Ms. Chiriboga's counsel has conferred with counsel for Utah County, who "represented that the County understood the ICE detainer to be mandatory." ECF No. 21, p. 6.

Ms. Chiriboga filed her first complaint and motion for a temporary restraining order in this court on August 18, 2026. ECF Nos. 1 & 2. On August 20, 2026, this court directed the parties to brief the legal basis for Ms. Chiriboga's detainer and whether it would cause her to be detained for longer than 48 hours and, if so, whether that detention would be lawful. ECF No. 11. Respondents

assumed custody of Ms. Chiriboga pursuant to the detainer on August 22, 2026. ECF No. 19-1 ⁋ 15.

Respondents transferred Ms. Chiriboga to El Paso, Texas, on August 24, 2026. The same day, after being informed by Ms. Chiriboga's counsel that ICE had taken custody of her, this court issued an order directing Respondents not to transfer Ms. Chiriboga to any facility more than 100 miles from the Orrin G. Hatch United States Courthouse. *Id*. at 17; ECF No. 16. Respondents informed this court on August 26, 2026, that ICE was "working to have [Ms. Chiriboga] returned" and that she was "expected to arrive in Utah the afternoon of August 27, 2026." ECF No. 18, p. 1.

Respondents also informed this court that no facilities in Utah could house Ms. Chiriboga for more than 72 hours. ECF No. 18, pp. 1–2. Respondents therefore stipulated with Ms. Chiriboga's counsel that she would be housed at Sweetwater County Detention Center in Rock Springs, Wyoming during these proceedings. ECF Nos. 18 & 20.

On August 31, 2026, this court held a hearing regarding Ms. Chiriboga's complaint and motion, but Ms. Chiriboga was not present. Counsel for both parties reported that they were unaware of Ms. Chiriboga's whereabouts as of August 31, 2026. Counsel for respondents confirmed that Ms. Chiriboga had still been in El Paso as of Friday, August 28, 2026, contrary to Respondents' representation to this court on August 26. This court therefore ordered Respondents to file a status report within 48 hours, informing this court of Ms. Chiriboga's location and what mechanism her counsel could use to reach her.

Respondents filed a status report on September 1, 2026, indicating that Ms. Chiriboga was detained at the Uinta County Detention Center in Evanston, Wyoming, as of September 1. ECF No. 23, p. 1. Respondents did not indicate when Ms. Chiriboga reached that facility or when she might be transferred to the Sweetwater County Detention Center. *Id*. Respondents also reported

that Ms. Chiriboga's attorney "may call (307) 783-1020 to arrange to speak with her" and that the "calling hours listed for this facility on the website for Immigration and Customs Enforcement are 7 a.m. to 5 p.m." *Id*.

**LEGAL STANDARD**

"Preliminary injunctive relief—whether a temporary restraining order or a preliminary injunction—'is an extraordinary remedy never awarded as of right.'" *Schiermeyer ex rel. Blockchain Game Partners, Inc. v. Thurston*, 697 F. Supp. 3d 1265, 1269 (D. Utah Oct. 9, 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). To obtain preliminary relief, a party must show that (1) it "is substantially likely to succeed on the merits"; (2) it "will suffer irreparable injury if the injunction is denied"; (3) its "threatened injury outweighs the injury the opposing party will suffer under the injunction"; and (4) "the injunction would not be adverse to the public interest." *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016).

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that her custody is in violation of the law. *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner.").

## ANALYSIS

### I. Ms. Chiriboga's Amended Motion for a Temporary Restraining Order & Other Injunctive Relief Is Moot.

Ms. Chiriboga asks this court to enter a Temporary Restraining Order and Preliminary Injunction (1) ordering her immediate release from ICE custody; (2) enjoining Respondents from relying on the challenged ICE detainer as a basis for her detention; (3) enjoining Respondents from transferring her outside Utah or the United States while this action is pending; and (4) ordering Respondents to preserve all relevant documents. ECF No. 15, pp. 10–11.

Ms. Chiriboga's first request, for her immediate release from ICE custody, is duplicative of her petition for a writ of habeas corpus, and the remaining requests for injunctive relief are now moot. Ms. Chiriboga's second request is moot because she is no longer being held by Utah County pursuant to an ICE detainer, and her third request has been rendered moot by this court's order granting the parties' stipulated motion that Respondents be allowed to transfer Ms. Chiriboga to the Sweetwater facility in Wyoming. ECF No. 20.

Ms. Chiriboga's fourth request is redundant with the law regarding parties' obligations to preserve relevant documents. "'As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which [he or she] knows or reasonably should know is relevant to the action' or 'may be relevant to future litigation.'" *Franklin v. Stephenson*, No. 20-CV-0576 MIS-JFR, 2022 WL 6225303, at *7 (D.N.M. Feb. 16, 2022), report and recommendation adopted, No. 1:20-CV-576 MIS/JFR, 2022 WL 6103342 (D.N.M. Oct. 7, 2022). This obligation applies with equal force to electronically stored information and to evidence relevant to habeas petitions. *Id*. Though the court finds that it is unnecessary to issue an order directing the parties to fulfill their obligations under existing law, it notes that adverse inferences may be drawn based on a party's failure to

preserve evidence, even if that evidence was destroyed pursuant to preexisting policies regarding the routine deletion or destruction of records. *Id*. at *8.

Having addressed Ms. Chiriboga's motion for a temporary restraining order, the court now turns to her petition for a writ of habeas corpus. The parties waived the filing of a motion for an order to show cause and argued the merits of Ms. Chiriboga's petition during this court's August 31 hearing.

## II. Ms. Chiriboga's Petition for Habeas Corpus

Ms. Chiriboga has demonstrated that her continued custody violates her right to due process. It is "well established" that non-citizen detainees are entitled to "due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Supreme Court has outlined three factors that are relevant to determining whether a plaintiff's due process rights have been violated: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

### *A. Ms. Chiriboga's Liberty Interest*

Ms. Chiriboga has a substantial protected liberty interest at stake. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Courts have accordingly held that "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *see Pruitt v. Heimgartner*, 620 F.

App'x 653, 657 (10th Cir. 2015) (unpublished) ("It is well-established that 'a liberty interest inherent in the Due Process Clause arises upon an inmate's release [on parole] from confinement,'" quoting *Boutwell v. Keating*, 399 F.3d 1203, 1212 (10th Cir. 2005)).

*B. The Risk of an Erroneous Deprivation Due to the Procedures Employed by ICE*

The procedures used to detain Ms. Chiriboga are highly likely to result in the erroneous deprivation of Ms. Chiriboga's liberty. "Civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 317 (E.D.N.Y. 2025), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026). Here, Respondents 1) issued a detainer against Ms. Chiriboga that lacked any statutory basis from its inception; (2) caused her to be detained beyond the 48 hours authorized by a lawful detainer; 3) seemingly denied Ms. Chiriboga the opportunity to consult with her counsel; and 4) erroneously cited 8 U.S.C. § 1225(b) to justify her continued detention. Indeed, it appears that Ms. Chiriboga *was* erroneously deprived of her liberty because of the unauthorized detainer issued against her; that ICE continues to detain her based on an inapplicable statutory provision; and that ICE has not exercised the discretion envisioned under § 1226(a) to determine whether Ms. Chiriboga was a flight risk or danger to the community. Taken together, these circumstances demonstrate an extremely high risk that Ms. Chiriboga is erroneously detained.

1) Authorization to Issue the Detainer

Ms. Chiriboga argues that ICE relies on regulation 8 C.F.R. § 287.7 to issue detainers directing state authorities to continue to hold non-citizens after they would otherwise be released. ECF No. 14 ⁋ 27. Respondents do not appear to challenge this claim. *See* ECF No. 19, p. 6. Ms. Chiriboga further argues that the Department of Homeland Security (DHS) cannot issue

regulations granting itself detention authority beyond that granted to it by Congress. ECF No. 14 ⁋ 27. Respondents do not directly challenge this general proposition but insist that "8 U.S.C. § 1103 contains a broad grant of authority to the Secretary of Homeland Security to establish regulations necessary for carrying out his or her authority under the Immigration and Naturalization Act." ECF No. 19, n. 3. But the "rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 213 (1976). The Supreme Court's recent jurisprudence has emphasized that courts cannot defer to agencies when interpreting statutes and "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

Turning to 8 C.F.R. § 287.7 itself, the regulation cites "sections 236 and 287" of the Immigration and Nationality Act (INA) as bases for ICE's authority to issue detainers. 8 C.F.R. § 287.7(a). But Section 287, now 8 U.S.C. § 1357, which authorizes detainers only where a non-citizen is arrested for violating a law relating to controlled substances, does not apply to Ms. Chiriboga. 8 U.S.C. § 1357(d). And Section 236, now 8 U.S.C. § 1226, similarly does not apply to Ms. Chiriboga. It states that the "Secretary of Homeland Security shall issue a detainer for an alien described in paragraph (1)(E) and, if the alien is not otherwise detained by Federal, State, or local officials, shall effectively and expeditiously take custody of the alien." 8 U.S.C. § 1226(c)(3). But Paragraph (1)(E) refers only to any non-citizen who:

> (i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; <u>and</u>
>
> (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a

> law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

8 U.S.C. § 1226(c)(1)(E) (emphasis added).[2]

At oral argument, counsel for Respondents appeared to concede that neither statute applies to Ms. Chiriboga. Instead, Respondents cite 8 U.S.C. § 1226(c)(3) as a justification for issuance of the detainer. ECF No. 19-1, p. 6. The detainer's other purported justification is that Ms. Chiriboga "otherwise poses a risk to national security, border security, or public safety." *Id*. But the detainer cites no statute authorizing ICE to issue detainers on this basis, and counsel for Respondents did not cite evidence supporting this determination beyond the conduct described in the police report leading to Ms. Chiriboga's arrest, which Utah County declined to prosecute. *Id*.; In short, ICE's detainer lacked any statutory basis.

2) Adherence to the 48-Hour Limit

DHS' own regulation establishes a time limit for detentions pursuant to an ICE detainer:

> [u]pon a determination by the Department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department.

8 C.F.R. § 287.7(d). As discussed above, Ms. Chiriboga was arrested on Sunday August 16. Her bail was set, and ICE issued its detainer, the same day. But Ms. Chiriboga was held without bond pursuant to the detainer until ICE assumed custody of her on Saturday, August 22, five non-holiday weekdays later.

---

[2] Paragraphs (6)(A), (6)(C), and (7) of 8 U.S.C. § 1182(a) describe "aliens present without admission or parole," including those who fail to attend removal proceedings, misrepresent material facts to procure lawful status, and immigrants who, at the time of application for admission, do not have valid documents. 8 U.S.C. § 1182(a)(6)(A); 1182(a)(6)(C); 1182(a)(7).

Respondents argue that because "the detainer did not *require* that the state authorities at the Utah County Jail hold Plaintiff for any amount of time, the detainer itself would not necessarily have caused Plaintiff to be detained for any time beyond the time she otherwise would be released." ECF No. 19, pp. 8–9 (emphasis in original). The court is not persuaded. First, Ms. Chiriboga has submitted state records clearly indicating that her bail was set but that Utah County reclassified her as not bailable because of the ICE detainer. ECF No. 14-1, p. 1. Indeed, counsel for Utah County confirmed that Ms. Chiriboga was designated as "Not Bailable" because of the detainer. ECF No. 21, p. 6. Thus, the ICE detainer clearly "caused" Ms. Chiriboga's continued detention.

Second, "[i]t is well established that a law enforcement officer is liable under the Fourth Amendment for effecting a seizure even if that officer does not personally take the subject into custody because an officer is 'responsible for the natural consequences of his actions.'" *Uroza v. Salt Lake Cnty.*, No. 2:11CV713DAK, 2013 WL 653968, at *6 (D. Utah Feb. 21, 2013), quoting *Malley v. Briggs*, 475 U.S. 335, 344 n. 7 (1986). Respondents cite no evidence that Ms. Chiriboga's continued detention was anything other than the natural consequence of ICE issuing its detainer. Indeed, courts in this district and others have concluded that petitioners held in custody by state authorities for more than 48 hours pursuant to ICE detainers were unlawfully detained by ICE. *Uroza*, 2013 WL 653968, at *6; *Gonzalez v. Noem*, No. 1:25-CV-00150-GNS, 2025 WL 3140802, at *7 (W.D. Ky. Nov. 10, 2025).

Third, Respondents cite this court's decision in *Valdez v. Bd. of Immigr. & Customs Enf't*, Case No. 1:22-cv-00040-JNP, at 2-3 (D. Utah Apr. 19, 2022), for the proposition that immigration detainers "do not require or mandate action" by a state agency. ECF No. 19, p. 8. But *Valdez* is easily distinguishable. There, the petitioner was not subject to release because he had been

convicted of multiple state offenses and was in custody for the purpose of serving his criminal sentence. *Id*. at 3. Here, Ms. Chiriboga was never charged with a state offense at all.

Fourth, Respondents suggested at this court's hearing that Ms. Chiriboga was in fact detained for fewer than 48 hours because Utah state authorities did not decide that they would not charge Ms. Chiriboga with a crime until Friday, August 21, and Ms. Chiriboga was transferred to federal custody on August 22. But this ignores the fact that Ms. Chiriboga's bail was set at $500 on August 16. ECF No. 14 ¶¶ 52–53. And when ICE issued its detainer against Ms. Chiriboga later the same day, Utah County, understanding the detainer to be mandatory, then designated Ms. Chiriboga as "Not Bailable." ECF No. 19-1, p. 6; ECF No. 21, p. 6. But for ICE's detainer, Ms. Chiriboga could have paid her bail and been released from custody at least as early as August 17.

3) Ms. Chiriboga's Right to Counsel

During this court's August 31 hearing, Ms. Chiriboga's counsel represented that, since Ms. Chiriboga was taken into federal custody, he has been unable to locate her and has received no information regarding her movements despite using DHS's G-28 form to register with DHS as her counsel of record. As discussed above, Respondents represented to the court that Ms. Chiriboga would be returned to Utah by the afternoon of August 27 but later reported that she was still in Texas as of August 28. ECF No. 18, p. 1. And during the August 31 hearing, Respondents represented that they were unaware of Ms. Chiriboga's most recent whereabouts.

Ms. Chiriboga's counsel also represented to this court that he has had no opportunity to confer with Ms. Chiriboga since she was transferred to federal custody. He explained that DHS directs a detainee's legal representative to call the Enforcement & Removal Operations field office for the region where the detainee was taken into custody to inquire about the detainee's status. However, this avenue of inquiry is apparently closed, as the Salt Lake City field office's phone

line for inquiring about individuals in ICE custody has been disconnected. Counsel represented that the phone line was briefly reconnected following inquiries related to another case in this district but has since been disconnected again.

In addition to having a statutory right to counsel in removal proceedings before an immigration judge, non-citizen detainees are entitled to "due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993); 8 U.S.C. § 1362. Courts in this district have similarly found that "detained persons, whether citizens or noncitizens, have due process rights and the right of access to counsel." *Reyes v. United States Immigr. & Custom Enf't*, No. 2:25-CV-01159, 2026 WL 266952, at *1 (D. Utah Feb. 2, 2026). Preventing Ms. Chiriboga from conferring with her counsel such that he can effectively represent her clearly increases the risk of an erroneous detention.

4) Statutory Basis for Ms. Chiriboga's Continued Detention

Respondents also argue that the lawfulness of the ICE detainer is immaterial because Ms. Chiriboga is subject to mandatory detention under 8 U.S.C. § 1225(b). ECF No. 19, p. 9. But as Respondents acknowledge, this court's rulings are clear: a non-citizen apprehended in the interior is not an arriving alien. Thus, any detention of that non-citizen falls within the discretionary detention framework of 8 U.S.C. § 1226(a). *Vargas Rodriguez v. Leyva et al.*, Case No. 1:26-cv-00132-JNP, 12 (Aug. 24, 2026).

This includes non-citizens who enter the United States after making an appointment using the CBP One app and are then granted parole pursuant to 8 U.S.C. § 1182(d)(5). *Id*. It applies equally to non-citizens whose parole has terminated; "the 'entry fiction' theory cannot apply indefinitely to an individual whose parole has terminated." *Sananes Hernandez v. Leyva*, No. 4:26-CV-00054-DN, 2026 WL 1948965, at *7 (D. Utah July 6, 2026). "Once parole terminates, . . . a

noncitizen living in the United States 'is deemed to be unlawfully present in the United States.'" *Imamov v. Jamison*, No. CV 26-2204, 2026 WL 1164682, at *7 (E.D. Pa. Apr. 29, 2026) (citing *Cabrera Martinez v. Marich*, 816 F. Supp. 3d 356, 366–67 (W.D.N.Y. 2025)). And "[d]etention of 'aliens already present in the United States' is governed by § 1226." *Imamov*, No. CV 26-2204, 2026 WL 1164682, at *7 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018)). In short, Respondents concede that Ms. Chiriboga's case cannot be distinguished from previous cases in which this court has found that 8 U.S.C. § 1226(a), rather than § 1225(b), applies.

The Tenth Circuit has emphasized that when the government seeks to detain a non-citizen pursuant to 8 U.S.C. § 1226, "the detention is civil and nonpunitive," so the government's reason for detaining the non-citizen "must rise to the level of a 'strong special justification.'" *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1249 (10th Cir. 2026). Where a non-citizen is detained pursuant to § 1226 but is "neither a flight risk nor a danger to the community," the non-citizen "should be discretionarily released." *Id.* at 317. Respondents cite Ms. Chiriboga's arrest and the related misdemeanor assault allegations to support her continued detention. But Utah authorities declined to charge Ms. Chiriboga for the alleged misdemeanor assault, and Respondents have provided no evidence or reasoning to suggest that Ms. Chiriboga is either a flight risk or a danger to the community.

As this court has explained in similar circumstances, because Ms. Chiriboga's detention is governed by § 1226(a) rather than § 1225(b), immediate release is the appropriate remedy for this violation of her due process rights. *Vargas Rodriguez*, Case No. 1:26-cv-00132-JNP, at 17. First, detention under § 1226(a) requires a warrant issued by the Attorney General or Department of Homeland Security. 8 U.S.C. §§ 1226(a), 1103(g); 6 U.S.C. §§ 202, 251, 557; 8 C.F.R. § 287.5. But the warrant submitted by Respondents does not appear to have been served on Ms. Chiriboga.

ECF No. 19-1, p. 10. Second, "discretionary detention under the ambit of Section 1226(a) requires the exercise of discretion. Where there is no evidence or argument that such discretion was exercised, detention under that subsection is illegal." *See Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *13 (S.D.N.Y. Dec. 17, 2025). And when the initial instance of detention is illegal, a custody re-determination hearing fails to address the actual constitutional injury. *See Sananes Hernandez*, No. 4:26-CV-00054-DN, 2026 WL 1948965, at *10 ("[H]is detention was unlawful at its inception and it remains unlawful.").

*C. The Government's Interest*

Providing Ms. Chiriboga with a pre-deprivation hearing would not have imposed a costly burden on the government or unduly interfered with the government's interests in protecting the public or enforcing immigration law. Ms. Chiriboga was always entitled to a custody redetermination hearing under § 1226(a); requiring that hearing to take place before Ms. Chiriboga was detained would not have increased administrative costs. *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost."). "Indeed, a pre-deprivation hearing could reduce administrative costs by potentially avoiding an erroneous deprivation of liberty, which would save the costs of unnecessary detention." *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1037 (N.D. Cal. 2025). At bottom, "[i]f the government wishes to re-arrest [Ms. Chiriboga] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). A pre-deprivation hearing is warranted.

Returning to the *Mathews* factors, the court finds that Ms. Chiriboga's due process rights have been violated. Ms. Chiriboga's liberty interest is substantial. The procedures employed by ICE create a significant risk of erroneous detention: ICE issued a detainer without statutory basis;

caused Ms. Chiriboga to be detained beyond the 48 hours allowed for properly issued detainers; appears to have interfered with Ms. Chiriboga's ability to confer with her counsel; and relied on an inapplicable statute to justify Ms. Chiriboga's continued detention. Though the government has an interest in protecting the public and enforcing immigration law, a pre-detention hearing would not have unduly burdened that interest.

**III. Relief**

The above discussion provides two bases for this court to grant Ms. Chiriboga's petition for a writ of habeas corpus. First, Ms. Chiriboga's due process rights were violated when ICE issued an unlawful detainer against her; caused her to be detained longer than 48 hours pursuant to that detainer; and denied her access to her counsel. Second, Ms. Chiriboga's due process rights were violated when ICE continued to detain her on the basis of an inapplicable statute, 8 U.S.C. § 1225(b). Immediate release is the appropriate remedy for both.

The court thus orders that Respondents release Ms. Chiriboga, and if they seek to re-detain her, they must provide her with notice and a pre-deprivation hearing, in which the government bears the burden of establishing by clear and convincing evidence that Ms. Chiriboga is a flight risk or danger to the community.

Ms. Chiriboga also seeks declaratory relief. Specifically, Ms. Chiriboga seeks declarations that the detainer issued against her was unlawful; that Respondents violated the Administrative Procedure Act; and that Respondents violated Ms. Chiriboga's Fifth Amendment rights. ECF No. 14, p. 44. The court declines her request for such relief.

The Tenth Circuit directs courts to consider the following factors when deciding actions for declaratory relief:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata "; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994). Here, declaratory relief alone would not settle the controversy and, as discussed above, the legal issues regarding detention under § 1226(a) have already been clarified by the Tenth Circuit. Though this case does not implicate concerns of procedural fencing and does not seem likely to increase friction between state and federal courts, ordering Ms. Chiriboga's release pursuant to the conditions specified herein provides sufficient remedy.

Finally, Ms. Chiriboga asks this court to award her costs and reasonable attorneys' fees. ECF No. 14, p. 44. Given this court's ruling in favor of Ms. Chiriboga today, the court finds that attorney's fees are warranted. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (holding that "habeas actions challenging immigration detention are unambiguously 'civil actions'" and that "[t]he EAJA authorizes the award of attorneys' fees to petitioners who prevail against the Government in such actions"). The court invites Ms. Chiriboga's counsel to submit a petition for attorney's fees, including a fee affidavit.

## CONCLUSION AND ORDER

For the foregoing reasons, the court ORDERS as follows:

1. Ms. Chiriboga's motion for a temporary restraining order is DENIED AS MOOT. ECF No. 15.

2. Ms. Chiriboga's petition for a writ of habeas corpus is GRANTED. Her request for declaratory relief is DENIED. ECF No. 14.
3. Respondents are ORDERED to either immediately release Ms. Chiriboga or to release Ms. Chiriboga in Salt Lake City as soon as practical and without undue delay, based on Ms. Chiriboga's preference. If applicable, Respondents must provide a status report within 48 hours detailing the release plan and any associated timeline. Respondents must also provide a status report informing the court of Ms. Chiriboga's release within 24 hours of the release.
4. Respondents are ORDERED, at the time of release, to provide Ms. Chiriboga any personal effects and identification documents that were confiscated from her.
5. Respondents are ENJOINED from imposing further restraints on liberty (e.g., electronic monitoring) that were not imposed on Ms. Chiriboga prior to her 2026 ICE detention, unless those restraints are determined to be necessary at a future pre-deprivation or custody hearing. Ms. Chiriboga must be released to the same legal status and conditions she enjoyed prior to her detention.
6. If Respondents seek to re-detain Ms. Chiriboga, absent exigent circumstances, they must provide Ms. Chiriboga notice of at least seven days before a pre-deprivation hearing before an immigration judge in which the government bears the burden of establishing by clear and convincing evidence that Ms. Chiriboga is a flight risk or danger to the community. Respondents are ENJOINED from re-detaining Ms. Chiriboga on the basis that she is subject to detention under 8 U.S.C. § 1225(b)(2).

DATED September 18, 2026.

BY THE COURT

Jill N. Parrish
Chief United States District Court Judge
District of Utah